# In the United States Court of Federal Claims

Nos. 13-500C, 13-499C, 13-800C, 16-1187C
(Filed:  September 15, 2017)

*************************************

| | | |
|---|---|---|
| THE HANOVER INSURANCE | * | |
| COMPANY et al., | * | RCFC 15(a); Motion to Amend Answers; |
| | * | Amended Pleadings; Special Plea in Fraud |
| Plaintiffs, | * | Defense; Anti-Fraud Provision of the |
| | * | Contract Disputes Act of 1978; False |
| v. | * | Claims Act; <u>Foman v. Davis</u>; Undue Delay; |
| | * | Improper Purpose; Prejudice; Futility of |
| THE UNITED STATES, | * | Amendment; Surety Liability; Matter of |
| | * | Right |
| Defendant. | * | |

*************************************

<u>James M. Mulvaney</u>, Morristown, NJ, and <u>Michael H. Payne</u>, Philadelphia, PA, for plaintiffs.

<u>John H. Roberson</u>, United States Department of Justice, Washington, DC, for defendant.

## <u>OPINION AND ORDER</u>

**SWEENEY**, Judge

Before the court is defendant's motion for leave to file, pursuant to Rule 15(a) of the Rules of the United States Court of Federal Claims ("RCFC"), amended answers asserting an affirmative defense and three counterclaims in each of the complaints in this consolidated action. For the reasons stated below, the court grants in part and denies in part defendant's motion.

## I.  BACKGROUND

Plaintiffs are Lodge Construction, Inc. ("Lodge"), a construction company located in Fort Myers, Florida, and The Hanover Insurance Company ("Hanover"), Lodge's surety.  Def.'s Mot. Amend Pleadings ("Def.'s Mot.") 1-2, ECF No. 68.  Four cases make up this consolidated action:

- <u>Lodge Construction, Inc. v. United States</u>, No. 13-499C (Fed. Cl. filed July 22, 2013) ("<u>Lodge I</u>");

- <u>Hanover Insurance Co. v. United States</u>, No. 13-500C (Fed. Cl. filed July 22, 2013) ("<u>Hanover I</u>");

- Lodge Construction, Inc. v. United States, No. 13-800C (Fed. Cl. filed Oct. 15, 2013) ("Lodge II"); and

- Hanover Insurance Co. v. United States, No. 16-1187C (Fed. Cl. filed Sept. 22, 2016) ("Hanover II").[1]

Id. at 2.  The allegations in each case arise under the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C. §§ 601-613 (2006).[2]  See Lodge I Compl. ¶ 3; Hanover I Compl. ¶ 2; Lodge II Compl. ¶ 3; Hanover II Compl. ¶ 2.

Lodge's contract with the Corps was awarded on August 24, 2010, and concerned work on the Corps's ongoing "Everglades Upgrade" project in South Florida.[3]  Lodge I Compl. ¶ 7. The contract required Lodge to perform the following "design and construction activities":

> miscellaneous demolition work; levee construction; installation of temporary access bridges; clearing and grubbing of vegetation; dewatering; borrow and disposal area operations; excavation and fill placement; construction of an armored spillway; erosion control, including soil cement and reinforced grass; installation of embankment instrumentation; construction of a six (6) acre wildlife wetland area; and other miscellaneous embankment construction activities, including an extensive sheet pile operation.

Id.  Ultimately, the contract was terminated for default on July 23, 2012.  Id. ¶¶ 46, 59.  Pursuant to a Tender and Release Agreement executed on or about December 31, 2012, Hanover tendered a new contractor and paid the Corps $23,995,183.36—the difference between the amount paid to the new contractor to complete the work and the unpaid balance of the Corps's contract with Lodge.  Id. ¶¶ 60-63.

In Lodge I and Hanover I, Lodge and Hanover challenged the default termination and sought money damages resulting therefrom.  Id. ¶¶ 45-55; Hanover I Compl. ¶¶ 22-35.  Hanover also asserted an "equitable lien on any amounts recovered by Lodge," Hanover I Compl. ¶ 39,

---

[1] Hanover I is the lead case.  Order, Sept. 23, 2013, ECF No. 12; see also Hanover II, No. 16-1187C (Fed. Cl. Dec. 16, 2016) (unpublished order consolidating the case with previously consolidated cases).  All electronic case filing numbers in this opinion refer to the lead case.

[2] All citations to the CDA are to the version of that statute in effect when Lodge executed its contract with the United States Army Corps of Engineers ("Corps").  Congress has since updated and reorganized title forty-one of the United States Code.  See generally Pub. L. No. 111-350, 124 Stat. 3677 (2011).  The CDA is now codified at 41 U.S.C. §§ 7101-7109.  Id. at 3816.

[3] Hanover executed concomitant performance and payment bonds on August 25, 2010. Def.'s Reply Hanover Resp. Ex. 4, ECF No. 90-1.

and declared that it is entitled to any funds recovered by Lodge pursuant to its indemnity agreement with Lodge, id. ¶ 47.  In Lodge II, Lodge appealed the contracting officer's denial of its dewatering, design, and wall breach claims, seeking $5,767,162.93 and a contract extension of 154 days "due to government caused delays," Lodge II Compl. ¶ 84, broken down as follows:

| Claim | Damages Sought | Contract Extension Sought |
|-------|---------------|---------------------------|
| Dewatering | $3,282,123.02 | 91 days |
| Design | $679,279.58 | 63 days |
| Wall Breach | $1,805,760.33 | Indeterminate |
| **Total** | **$5,767,162.93** | **154 days** |

Id. ¶¶ 28, 56, 66.

Defendant filed answers to all three complaints, see Lodge I Answer, ECF No. 17; Hanover I Answer, ECF No. 16; Lodge II Answer, ECF No. 19, and also moved to dismiss Lodge's and Hanover's claims for money damages related to the default termination, Def.'s Mot. Dismiss, ECF No. 15.  Because neither Lodge nor Hanover had presented a claim for default termination damages to the Corps's contracting officer, the court granted defendant's motion. Hanover Ins. Co. v. United States, 116 Fed. Cl. 303, 309-10 (2014).

In response to the court's ruling, Hanover submitted a certified claim for $24,476,106.47 in default termination damages to the Corps's contracting officer.  Hanover II Compl. ¶ 26. Hanover then filed its second action, Hanover II, after its claim was denied.  Id. ¶¶ 32-33.  In addition to seeking default termination damages, Hanover again asserted "an equitable lien on all funds due or to become due in connection with the original Contract, including any amounts that may become due to Lodge."  Id. ¶ 33(d).  Defendant then filed its answer.[4]  In none of its original four answers did defendant assert any affirmative defenses or counterclaims.

In the meantime, the parties had begun discovery.  On November 22, 2016, the parties moved for an additional 154 days "to complete all fact and expert discovery," noting that (1) fact discovery was "substantially completed," with only one deposition and certain other tasks remaining, and (2) the court had previously granted four requests for enlargements of time with respect to the discovery schedule:

- joint request for 37 days,

- plaintiff's unopposed request for 240 days,

- joint request for 180 days, and

- defendant's unopposed request for 180 days.

---

[4]  Defendant filed its answer in Hanover II prior to that case being transferred to the undersigned and consolidated with Lodge I, Hanover I, and Lodge II.

Joint Mot. Amend Expert Disc. Deadlines 1-2, ECF No. 63.  The court granted the parties' request the following day.  Order, Nov. 23, 2016, ECF No. 64.  Additional consent motions for extensions of time to complete discovery—which now runs through December 6, 2017—were subsequently granted on May 1, 2017, and July 26, 2017.  Order, July 26, 2017, ECF No. 92; Order, May 1, 2017, ECF No. 76.

On April 5, 2017, Lodge moved to amend its complaint in Lodge II.  See generally Lodge Mot. Leave Amend Compl., ECF No. 66.  Lodge explained that the Corps's termination of the contract prevented it from performing the work and incurring the costs set forth in its wall breach claim, and thus the wall breach claim should not have been included in the original Lodge II complaint.  Id. ¶¶ 12-15.  According to Lodge, its counsel became aware of the inadvertent inclusion of the wall breach claim while conducting discovery.  Id. ¶ 16.  Lodge had informed defendant, in October 2015, of its intention to seek leave to amend its complaint to correct the mistake, but "the actual filing of [the motion for leave to amend its complaint] was unfortunately delayed while counsel conducted extensive fact discovery . . . , the last [deposition] of which[] was completed on January 25, 2017."  Id. ¶¶ 17-18.  In addition to removing the wall breach claim from its complaint, Lodge sought to increase its damages associated with the design claim.  Id. ¶ 19.  Lodge remarked that the original design claim included damages calculated through May 30, 2012, for itself and through June 19, 2012, for its subcontractor Civil Construction Technologies, Inc. ("CCT"), but that there were additional damages totaling $514,899.74 for itself and for CCT up through the July 23, 2012 termination date.  Id. ¶¶ 22-25.  Hanover did not oppose Lodge's motion.  Id. ¶ 32.  After viewing Lodge's proposed amended complaint, defendant filed a notice of nonopposition on April 21, 2017.  Def.'s Resp. Lodge Mot. Leave to Amend Compl. 1, ECF No. 72.

The court granted Lodge's motion for leave to amend its complaint, and Lodge filed its amended complaint in Lodge II on April 27, 2017.  In its amended complaint, Lodge realleged its dewatering claim for $3,282,123.02 and a contract extension of ninety-one days, Lodge II Am. Compl. ¶ 28, ECF No. 74.  Further, in its amended design claim, Lodge sought $679,279.58 in costs incurred through the date it submitted its claim, $514,899.74 in costs incurred after it submitted its claim, and a contract extension of sixty-three days.  Id. ¶¶ 54, 65.  Altogether, Lodge sought a "total of $4,476,302.35, plus a contract extension of at least 208 days due to government caused delays."[5]  Id. ¶ 85.  Defendant answered the next day, asserting the affirmative defense that Lodge's claims are "barred by illegality as a result of submitting a false claim."  Def.'s Answer Lodge II Am. Compl. ¶ 87, ECF No. 75.  Defendant also asserts fraud counterclaims against Lodge and Hanover for forfeiture and damages pursuant to the Special Plea in Fraud defense, 28 U.S.C. § 2514 (2012); the anti-fraud provision of the CDA, 41 U.S.C. § 604; and the False Claims Act, 31 U.S.C. § 3729 (2012).  Def.'s Answer Lodge II Am. Compl. ¶¶ 91, 160, 165, 169-70.

---

[5]  The sum of 91 days and 63 days is 154 days, which matches the demand listed in the original Lodge II complaint.  Lodge fails to explain the basis for the additional 54 days necessary to arrive at the 208 days demanded in the Lodge II amended complaint.

With respect to the Special Plea in Fraud defense, defendant argues that Lodge committed fraud when it submitted claims to the Corps's contracting officer "with the intent to cause the Government to pay Lodge amounts to which [Lodge] knows it is not entitled to receive," id. ¶ 156, and again committed fraud when it filed those same claims in this court, id. ¶ 157.  In addition, defendant contends that Hanover directly committed fraud by pursuing Lodge's entire claim in this court, which included a $1.1 million pass-through claim from CCT. Id. ¶ 158.  According to defendant, Hanover knew that CCT's pass-through claim was false because Hanover had previously settled CCT's pass-through claims in full for $370,000.  Id. With respect to the anti-fraud provision of the CDA, defendant avers that Lodge's certified claim to the Corps's contracting officer, as well as Lodge's and Hanover's claims in this court, were based on "false statements concerning Lodge's alleged damages and CCT's pass-through costs." Id. ¶¶ 162-63.  With respect to the False Claims Act, defendant remarks that Lodge's certified claim to the Corps's contracting officer "was a false and unsupportable overcharge for costs not incurred, double billing, and inflated costs" and that Lodge "had actual knowledge of the falsity of the claim or [] acted in deliberate ignorance or reckless disregard of the truth or falsity of its claim."  Id. ¶¶ 167-68.  With respect to all three counterclaims, defendant avows that "Hanover, as Lodge's surety, is liable for Lodge's fraud."  Id. ¶¶ 159, 164, 170.

Meanwhile, on April 6, 2017, the day after Lodge moved to amend its complaint in Lodge II, defendant sought leave to amend its answers to the complaints in all four consolidated cases.  See generally Def.'s Mot.  Defendant seeks to amend its answers "for the purpose of adding one new affirmative defense and three counterclaims" based on fraud.  Id. at 2; accord id. at 5 (declaring that defendant "requests leave to amend its pleading to assert a new affirmative defense and counterclaims" pursuant to the Special Plea in Fraud defense, the anti-fraud provision of the CDA, and the False Claims Act).  Defendant emphasizes that "[t]he four proposed amended answers are, with respect to [its] affirmative defense and fraud counterclaims, identical."  Id. at 1 n.1.  Defendant had informed counsel for Lodge and Hanover that it would be filing a motion for leave to amend its answers to assert fraud counterclaims prior to the filing of the Lodge II amended complaint.  Id. at 5 n.2.

In its May 22, 2017 answer to defendant's counterclaims in Lodge II, Lodge posited that defendant's answer to the Lodge II amended complaint was "inappropriate and premature" because defendant's motion for leave to file amended answers had yet to be resolved.[6]  Lodge Answer Def.'s Countercls. 1; accord id. at 12 ("Defendant's counterclaims in fraud are barred by illegality as a result of filing the counterclaims without leave of Court during the pendency of a Motion filed by Defendant requesting leave to file the very same counterclaims.").  Lodge and Hanover each filed responses to defendant's motion for leave to amend its answers, and defendant replied to each response.  The motion is now fully briefed, and the court considers oral argument unnecessary.

---

[6]  Lodge referred to defendant's answer to the Lodge II amended complaint as an "Amended Answer" rather than an answer to an amended complaint.  Lodge Answer Def.'s Countercls. 1, ECF No. 81.  The court observes that defendant's answer to the Lodge II amended complaint mirrors defendant's previously filed proposed amended answer in the Lodge II case. Compare Def.'s Answer Lodge II Am. Compl., with Def.'s Mot. Ex. D (Prop. Lodge II Am. Answer), ECF No. 68-4.

## II.  STANDARD OF REVIEW

RCFC 15 addresses amended and supplemental pleadings.  Specifically, RCFC 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave," and that "[t]he court should freely give leave when justice so requires."  The decision to grant leave to amend rests within the court's discretion.  Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 331 (1971); Centech Grp., Inc. v. United States, 78 Fed. Cl. 658, 659 (2007).  In Foman v. Davis, the United States Supreme Court explained that Rule 15(a) of the Federal Rules of Civil Procedure ("FRCP")

> declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded.  If the underlying facts or circumstances relied upon by a [party] may be a proper subject of relief, [it] ought to be afforded an opportunity to test [its] claim on the merits.  In the absence of any apparent or declared reason— such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."[7]

371 U.S. 178, 182 (1962) (footnote added) (citation omitted).  Although RCFC 15(a) provides that leave to amend shall be freely given, such leave "is not to be abused."  Fala Corp. v. United States, 53 Fed. Cl. 35, 37 (2002).

## III.  ANALYSIS

Lodge and Hanover oppose defendant's motion, arguing generally that defendant's attempt to assert its fraud counterclaims is untimely, an attempt to gain leverage, would cause undue prejudice, and is futile and destined to fail.  Defendant contends that there is no unfair delay, improper motive, undue prejudice, or futility with respect to its proposed affirmative defense and fraud counterclaims, and avers that its motion is moot since it already filed an answer to the amended complaint in Lodge II in which it raised the affirmative defense and fraud counterclaims.  Each argument will be addressed in turn.

---

[7] "[T]o the extent permitted by this court's jurisdiction," the RCFC "must be consistent with the [FRCP]."  RCFC 83(a).  Interpretation of the RCFC "will be guided by case law and the Advisory Committee Notes that accompany the [FRCP]."  RCFC, 2002 Rules Committee Note 1; see also Allgonac Mfg. Co. v. United States, 458 F.2d 1373, 1376 (Ct. Cl. 1972) ("This court may use interpretations of the Federal Rules in applying analogous Claims Court rules."); Zoltek Corp. v. United States, 71 Fed. Cl. 160, 167 (2006) (noting that interpretation of the FRCP "informs the Court's analysis" of the corresponding RCFC).

## A. Defendant's Motion Is Timely

The court first examines the timeliness of defendant's motion. A party should move to amend its pleading "as soon as the necessity for altering the pleading becomes apparent," i.e., "at the earliest opportunity." Alta Wind I Owner-Lessor C v. United States, 125 Fed. Cl. 8, 11 (2016) (internal quotation marks omitted). Timeliness depends upon "the particular facts and history of the case." King v. United States, 119 Fed. Cl. 51, 55 (2014).

According to defendant, it became apparent during discovery that Lodge's dewatering and design claims are fraudulent. Def.'s Mot. 3-5. Specifically, defendant contends that its motion is timely because (1) it first learned of the settlement between Hanover and CCT when it received a copy of the agreement following the August 26, 2016 deposition of Ron Coddington, the lead CCT employee on the project, id. at 4, 8;[8] (2) it was not able to determine that Lodge's claim was fraudulent until certain depositions were conducted in late 2016, id. at 8; and (3) it moved "promptly" and with "deliberate speed" in reviewing the information and seeking approval to assert its affirmative defenses and counterclaims, id.

Lodge argues that defendant's motion is "unreasonably late." Mem. Supp. Lodge Resp. Def.'s Mot. ("Lodge Resp.") 1, ECF No. 84. Lodge avers that defendant had all of the necessary information for reviewing and analyzing the bases for Lodge's dewatering claim when the claim was first submitted to the contracting officer in June 2012, and that the depositions in August and September 2016 did not provide any new information. Id. at 10. Hanover does not address the timeliness of defendant's motion beyond a passing reference to "rely[ing] on . . . any opposition filed by Lodge."[9] Hanover Resp. Def.'s Mot. ("Hanover Resp.") 1, ECF No. 83.

In reply, defendant emphasizes that it did not unduly delay raising its affirmative defense and fraud counterclaims. Def.'s Reply Lodge Resp. 7. In support of its position, defendant observes:

---

[8] In its motion, defendant incorrectly referred to the deposition of Mr. Coddington as taking place in July 2016. Mr. Coddington was actually deposed on August 26, 2016. Def.'s Reply Lodge Resp. 8 n.1, ECF No. 89.

[9] Referencing RCFC 5.4(b)(3), defendant urges the court to disregard Hanover's reliance on Lodge's opposition. Def.'s Reply Hanover Resp. 5, ECF No. 90. RCFC 5.4(b)(3) provides that "[a] party must not incorporate a brief or memorandum by reference; the court will disregard any such incorporation." However, the subheading for RCFC 5.4(b)(3) is titled "Relying on a Previously Filed Brief or Memorandum," and all of the reported opinions involving RCFC 5.4(b)(3) have considered the rule in the context of "an earlier-filed brief or memorandum," Milik v. Sec'y of HHS, 121 Fed. Cl. 68, 72 n.12 (2015). None of these opinions has considered RCFC 5.4(b)(3) in the context presented by the instant action, i.e., briefs concurrently filed by colitigants, and there is not a comparable FRCP provision to examine. However, because the court finds Lodge's arguments regarding the timeliness of defendant's motion unavailing, the court need not decide whether RCFC 5.4(b)(3) applies in this case.

- it did not receive a copy of the settlement agreement between CCT and Hanover until October 14, 2016, which was over two years after defendant's first document request, id. at 8;

- it "obtained evidence for the first time during Mr. Coddington's deposition that several components of CCT's claim were false," id. at 13;

- it did not receive all of the information necessary "to determine both the fact of the fraud and the intent accompanying Lodge's assertion of damages" with respect to Lodge's own claim until late 2016, id.;

- it provided notice to Lodge and Hanover that it intended to move for leave to assert fraud counterclaims a mere ten weeks after fact discovery concluded, five and one-half months after receiving a copy of the settlement agreement between CCT and Hanover, and six and one-half months after Hanover filed its complaint in Hanover II, id. at 18-19; and

- Lodge and Hanover have, either individually or jointly with defendant, already requested over two years' worth of enlargements of time in this action, id. at 20.

"[D]elay alone may suffice as a reason for denying a motion for leave to amend." Alfa Laval Separation, Inc. v. United States, 47 Fed. Cl. 305, 314 (2000). However, absent a showing of prejudice, such delay must be "measured in years." Cooke v. United States, 79 Fed. Cl. 741, 742 (2007). The court agrees with defendant that, based on the totality of the relevant facts and circumstances presented in this case, the instant motion is not untimely. There is no evidence to suggest that defendant delayed in bringing its motion. To the extent there was any delay, defendant has provided "an adequate explanation." Meyer Grp., Ltd. v. United States, 115 Fed. Cl. 645, 649 (2014). Even assuming, without deciding, that defendant was fully aware of the basis for Lodge's and Hanover's claims, the facts suggesting fraud were not uncovered until after discovery began, nor could they have been. Mr. Coddington was deposed on August 26, 2016, at which time defendant first became aware of the existence of the settlement agreement between CCT and Hanover. Moreover, the agreement itself was not produced for nearly three more months. Defendant filed its motion on April 6, 2017—223 days later. Absent a showing of undue prejudice (which, as discussed below, has not been made), such a delay does not warrant denying the motion. See, e.g., Cooke, 79 Fed. Cl. at 742 (finding a nine-month delay as "insufficient grounds to deny a motion to amend").

**B.  Defendant's Motion Shows No Improper Purpose**

Next, the court must determine whether there was any dilatory motive behind defendant's motion.  Lodge argues that defendant's motion was filed "as a tactic to gain leverage" and to further delay the case.  Lodge Resp. 1; accord id. at 7 ("Defendant's Motion must be seen for what it truly is—an attempt by the Government to delay and unfairly gain leverage in litigation . . . .").  Despite the bold nature of its assertion, Lodge does not provide any factual support for its argument regarding defendant's motive beyond advancing the position that defendant cannot prove that "Lodge's mistakes and errors . . . were made with the intention to defraud [or] with a reckless disregard for the accuracy of the claim."  Id. at 7.  Hanover does not address defendant's motive in filing its motion for leave to amend.

Lodge's argument concerning defendant's motive is conclusory and therefore meritless.  (Lodge's argument that defendant cannot prove scienter concerns the futility of defendant's motion, which is a separate issue that is discussed below.)  In explaining its motive, defendant stresses that "justice requires that the United States have an opportunity to demonstrate that Lodge submitted fraudulent claims in violation of Federal law" to ensure that plaintiffs are precluded "from reaping any benefit from [Lodge's] wrongdoing at the American taxpayer's expense."  Def.'s Mot. 7.  The court is satisfied that defendant did not file its motion for an improper purpose.

**C.  Granting Defendant's Motion Will Not Unduly Prejudice Lodge or Hanover**

The court must also consider whether granting defendant's motion would unduly prejudice Lodge or Hanover.  Undue prejudice is a "severe disadvantage or inability to present facts or evidence; [the] necessity of conducting extensive research shortly before trial due to the introduction of new evidence or legal theories; or [an] excessive delay that is unduly burdensome."  St. Paul Fire & Marine Ins. Co. v. United States, 31 Fed. Cl. 151, 153 (1994), quoted in First Nationwide Bank v. United States, 48 Fed. Cl. 248, 256 (2000).  Undue prejudice may arise when an amended pleading "would cause unfair surprise to the opposing party, unreasonably broaden the issues, or require additional discovery."  Cooke, 79 Fed. Cl. at 741-42.  Undue prejudice also arises "when amendment [of a pleading] would prevent the non-movant from adequately responding to the new claims."  Meyer Grp., 115 Fed. Cl. at 650.  Although amendments filed late in litigation are not automatically prejudicial, an amended pleading is more likely to cause undue prejudice "the further a case has progressed."  King, 119 Fed. Cl. at 55.  Prejudice typically results when amended pleadings are filed after the close of discovery or during summary judgment proceedings, or when allowing the filing of an amended pleading would "fundamentally alter the nature of the case and consequently impose additional discovery requirements on the non-moving party."  Id. at 55-56.  Such "new preparation" must be "significant" to be deemed "prejudicial."  Cencast Servs., L.P. v. United States, 729 F.3d 1352, 1364 (Fed. Cir. 2013); accord St. Paul Fire & Marine, 31 Fed. Cl. at 153 (explaining that "[m]ere annoyance and inconvenience . . . are insufficient").  The party invoking prejudice as a defense carries the burden of its demonstration.  Veridyne Corp. v. United States, 86 Fed. Cl. 668, 681 (2009).

Defendant posits that granting leave to file its proposed amended answers would not prejudice Lodge and Hanover because neither plaintiff would need additional discovery and there is no pending trial date. Def.'s Mot. 9. Lodge suggests that granting the motion would "potentially delay the resolution of Lodge's claims by months, if not years," and avers that being "forced to devote substantial effort and resources into a 'trial-within-a-trial' . . . will severely compromise [its] already limited resources and negatively impact [its] ability to pursue [its] own claims." Lodge Resp. 11-12. Lodge highlights its status as a "former small business concern that no longer operates, and no longer has any employees" to buttress its contention that its resources—i.e., "money and the availability and memories of its former employees"—are "fading." Id. Hanover does not address the issue of undue prejudice.

Defendant observes that limited-scope fact depositions with respect to its fraud counterclaims can proceed simultaneously with the ongoing expert discovery. Def.'s Reply Lodge Resp. 19. Defendant also argues that Lodge's complaints regarding delay are unavailing because "[t]he plaintiffs have individually requested a total of 382 days of enlargement in this case and they have participated in additional joint requests of 371 days of enlargement," and further emphasizes that "Lodge does not argue that it will be unable to present facts or evidence." Id. at 20-21. Finally, defendant contends that its fraud counterclaims will not "fundamentally alter the nature of this case" because Lodge has always carried the burden of proving the basis of its claims, and the only remaining issue is ascertaining Lodge's intentions in asserting those claims. Id. at 21.

The court agrees with defendant that Lodge's prejudice arguments lack merit. Fading memories and costs do not constitute prejudice with respect to an RCFC 15(a)(2) motion for leave to amend—even for a small business. Veridyne, 86 Fed. Cl. at 681.

Furthermore, Lodge's contention regarding additional delays should the court grant defendant's motion is misplaced. Discovery has yet to conclude, no motions for summary judgment have been filed, a trial has not been scheduled, and a joint status report is not due until December 21, 2017. Order, July 26, 2017. In Cencast, a proposed amended pleading was deemed "prejudicial" when its introduction was sought two years after the parties executed a stipulation that defined the scope of the case. 729 F.3d at 1363. The United States Court of Appeals for the Federal Circuit ("Federal Circuit") explained that the nonmoving party "had already devoted significant resources to litigating the issues long recognized as raised by the case," and noted that adding a new theory would necessitate "substantial" and "burdensome" additional discovery. Id. at 1364.

Here, however, the parties have not agreed to narrow the issues, and the additional discovery required is neither substantial nor burdensome because it is limited in scope and can take place concurrently with ongoing discovery. In addition, there is no unfair surprise because (1) the summary judgment and (if necessary) trial stages of this case are not imminent and (2) there have already been several enlargements of time regarding discovery deadlines in this case at Lodge's and Hanover's insistence or acquiescence, including two after defendant filed the instant motion. Moreover, information regarding the settlement agreement between CCT and Hanover was not disclosed until more than two years after relevant documents were requested. Finally, Lodge took approximately eighteen months to file its motion for leave to amend its

complaint in <u>Lodge II</u> after informing defendant that it intended to do so, highlighting ongoing discovery as the reason for the delay.  It is well settled that "in the law, what is sauce for the goose is normally sauce for the gander."  <u>Heffernan v. City of Paterson</u>, 136 S. Ct. 1412, 1418 (2016).  Thus, unlike in <u>Cencast</u>, granting leave to amend will not cause undue prejudice.

**D.  Defendant's Fraud Counterclaims Are Not Futile**

The court now evaluates plaintiff's final argument—the alleged futility, or lack thereof, of defendant's proposed amendments.  The crux of both Lodge's and Hanover's opposition to defendant's motion is that defendant's fraud counterclaims should not be allowed because those claims are futile and destined to fail.  There was no fraud, Lodge avows, because any inaccuracies in its claims are, at worst, "unintentional, honest, understandable, and explainable errors that were made during the difficult task of quantifying a delay and inefficiency claim," Lodge Resp. 1, and thus defendant cannot meet its burden of showing that Lodge exhibited the requisite scienter, <u>id.</u> at 7-8, 16.  Hanover similarly stresses that defendant's motion should be denied because defendant's "proposed affirmative defense and counterclaims are futile and would not survive [an RCFC] 12(b)(6) motion to dismiss."  Hanover Resp. 1.  Hanover also contends that defendant fails to plead fraud with particularity.  <u>Id.</u> at 2.

Hanover's observation that "[i]f an amendment is futile, it is not an abuse of discretion to deny leave to amend," <u>id.</u> at 11 (relying on <u>Mitsui Foods, Inc. v. United States</u>, 867 F.3d 1401, 1403-04 (Fed. Cir. 1989)), is correct.  <u>See, e.g.</u>, <u>Advanced Aerospace Techs., Inc. v. United States</u>, 130 Fed. Cl. 564, 568 (2017).  An amendment is futile if it would not survive an RCFC 12(b)(6) motion to dismiss.  <u>Meyer Grp.</u>, 115 Fed. Cl. at 650.  To survive an RCFC 12(b)(6) motion to dismiss, a counterclaim must include "enough facts to state a claim to relief that is plausible on its face" sufficient for the counterdefendant to have "fair notice" of the claim and the "grounds upon which it rests."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555, 570 (2007) (internal quotation marks omitted).  In other words, a counterclaimant must "plead[] factual content that allows the court to draw the reasonable inference that the [counter]defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (relying on <u>Twombly</u>, 550 U.S. at 556).  In ruling on such a motion, the court must "accept as true all of the factual allegations contained in the [counterclaim]" and any attachments thereto.  <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (per curiam) (citing <u>Twombly</u>, 550 U.S. at 555-56); <u>accord</u> RCFC 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."); <u>Rocky Mountain Helium, LLC v. United States</u>, 841 F.3d 1320, 1325 (Fed. Cir. 2016) (applying RCFC 10(c) and emphasizing that "a court 'must consider the complaint in its entirety, . . . in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice'" (quoting <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007))).

The issue at this stage of litigation is not the merits of defendant's counterclaims, but whether defendant has alleged specific facts describing plausible counterclaims such that its counterclaims are not futile and destined to fail.  <u>See Chapman Law Firm Co. v. Greenleaf Constr. Co.</u>, 490 F.3d 934, 938 (Fed. Cir. 2007) ("The court must determine 'whether the claimant is entitled to offer evidence to support the claims,' not whether the claimant will ultimately prevail." (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974))).

### 1.  Legal Requirements

Defendant proposes to add three statutory fraud counterclaims in each of its proposed amended answers:  the Special Plea in Fraud defense, the anti-fraud provision of the CDA, and the False Claims Act.  Def.'s Mot. 5.  Because "liability under one statute does not automatically trigger liability under the others," each must be considered.  Kellogg Brown & Root Servs., Inc. v. United States, 728 F.3d 1348, 1365 (Fed. Cir. 2013).

### a.  Special Plea in Fraud Defense

The Special Plea in Fraud defense provides:

> A claim against the United States shall be forfeited to the United States by any person who corruptly practices or attempts to practice fraud against the United States in the proof, statement, establishment, or allowance thereof.

> In such cases the United States Court of Federal Claims [("Court of Federal Claims")] shall specifically find such fraud or attempt and render judgment of forfeiture.

28 U.S.C. § 2514.  To prevail under the Special Plea in Fraud defense, also known as the "Forfeiture Statute,"[10] defendant must prove, by clear and convincing evidence, that Lodge and/or Hanover submitted false claims, knew those claims were false, and that their intent in submitting false claims was to defraud the government.  Kellogg Brown, 723 F.3d at 1365.  The statute is concerned with the fraud-tainted claim itself, and does not automatically apply broadly to every claim with respect to the same contract.  See id. at 1366 ("[T]he forfeiture statute is best understood as a companion requirement of claims procedure rather than a catch-all anti-fraud provision.").  However, claim forfeiture applies even when "only part of the claim [is] fraudulent."  Daewoo Eng'g & Constr. Co. v. United States, 557 F.3d 1332, 1341 (Fed. Cir. 2009).  For example, the Federal Circuit has applied 28 U.S.C. § 2514 to nullify the entirety of a $153,000 claim when the contractor knew the government was liable for only $104,000.  Id. (citing Young-Montenay, Inc. v. United States, 15 F.3d 1040, 1042-43 (Fed. Cir. 1994)).  The Special Plea in Fraud defense applies both to claims submitted to contracting officers and those filed in the Court of Federal Claims.  Tyger Constr. Co. Inc. v. United States, 28 Fed. Cl. 35, 61 (1993).

"Mere negligence, inconsistency, or discrepancies" are insufficient to successfully invoke the Special Plea in Fraud defense.  Horn & Assocs., Inc. v. United States, 123 Fed. Cl. 728, 754 (2015).  Ineptitude, making numerous mistakes, or using inartful descriptions in claims similarly do not constitute clear and convincing evidence of an intent to deceive.  Id. at 755, 760.  However, a party making false statements "can have the requisite scienter" for the Special Plea

---

[10]  In addition to being known as the "Forfeiture Statute," the Special Plea in Fraud defense is often referred to as the "Forfeiture of Fraudulent Claims Act."  See Commercial Contractors, Inc. v. United States, 154 F.3d 1357, 1362 (Fed. Cir. 1998).

in Fraud defense despite lacking actual knowledge of the statements' falsity if "the statements are made with reckless disregard for the truth."  Am. Heritage Bancorp v. United States, 61 Fed. Cl. 376, 391 (2004).

### b.  Contract Disputes Act

Congress enacted the anti-fraud provision of the CDA to prevent "the submission of baseless claims," which contribute to the "so-called horsetrading theory where an amount beyond that which can be legitimately claimed is submitted merely as a negotiating tactic." Daewoo, 557 F.3d at 1340.  Under the anti-fraud provision of the CDA,

> If a contractor is unable to support any part of [its] claim and it is determined that such inability is attributable to misrepresentation of fact or fraud on the part of the contractor, [the contractor] shall be liable to the Government for an amount equal to such unsupported part of the claim in addition to all costs to the Government attributable to the cost of reviewing said part of [the contractor's] claim.

41 U.S.C. § 604.  A "misrepresentation of fact" is "a false statement of substantive fact, or any conduct which leads to a belief of a substantive fact material to proper understanding of the matter in hand, made with intent to deceive or mislead."  Id. § 601(9).  In other words, to recover under the CDA's anti-fraud provision, defendant must "establish that the contractor made false or fraudulent statements in its submitted claim with an intent to deceive or mislead the government."  Commercial Contractors, 154 F.3d at 1362.  The requisite falsity and intent must be established by a preponderance of the evidence.  Daewoo, 557 F.3d at 1335.  Claims lacking plausibility or a "colorable basis" are deemed fraudulent.  Id. at 1339-40.

### c.  False Claims Act

Pursuant to the False Claims Act, a contractor that "knowingly presents, or causes to be presented, a false or fraudulent claim"; "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim"; or "conspires" to do so is liable for a civil penalty, triple damages sustained by the government, and the costs of recovering the penalty or damages.[11]  31 U.S.C. § 3729(a).  The term "knowingly" does not require a "specific intent to defraud," and encompasses "actual knowledge of the information," "act[ing] in deliberate ignorance of the truth or falsity of the information," and "act[ing] in reckless disregard of the truth or falsity of the information."  Id. § 3729(b).  In other words, a contractor is liable under the False Claims Act by presenting a claim to the federal government that is false or

---

[11]  For violations occurring prior to November 3, 2015, the statutory civil penalty, adjusted for inflation, is currently not less than $5,500 and not more than $11,000 per violation. 28 C.F.R. § 85.3(a)(9) (2017).  For violations occurring after November 2, 2015, the statutory civil penalty is currently not less than $10,957 and not more than $21,916 per violation.  Id. § 85.5.  If a contractor is liable under the False Claims Act, the court may, in its discretion, impose penalties anywhere within the range.  Horn, 123 Fed. Cl. at 762 n.76.

fraudulent when the presentation is made with scienter, i.e., when the contractor knew, was deliberately ignorant, or acted in reckless disregard of the falsity.  Kellogg Brown, 728 F.3d at 1367.  The statutory penalty applies even if the government did not sustain damages by paying the claim.  See Horn, 123 Fed. Cl. at 767 (collecting cases).  The elements of the False Claims Act must be proven by a preponderance of the evidence.  31 U.S.C. § 3731(d); Daewoo, 557 F.3d at 1340.

The False Claims Act applies to "not just those who set out to defraud the government, but also [to] those who ignore obvious deficiencies in a claim."  Horn, 123 Fed. Cl. at 763.  Deliberate ignorance and/or reckless disregard can be found where the contractor:

- fails to make a minimal examination of records, including those prepared by another party;

- deliberately ignores false information submitted as part of a claim;

- prepares its claim in a "sloppy or unsupervised fashion"; or

- submits a claim that is baseless.

Id. at 765.  However, an honest mistake or mere negligence, such as making a mathematical error or using flawed reasoning, is insufficient to establish scienter.  Id. at 766.  Further, statements of legal theories (as opposed to factual representations) do not constitute false claims.  Id. at 769.  Certified claims "may be a source of liability under both the Contract Disputes Act and the False Claims Act."  Daewoo, 557 F.3d at 1340-41.

### 2. Defendant's Proposed Amended Answers Plead Fraud With Particularity

The court first addresses the issue of whether defendant has pled fraud with sufficient particularity.  RCFC 9(b) provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

The purpose of pleading fraud with particularity is to allow formulation of a responsive pleading and guard parties against baseless claims.  Tyger Constr., 28 Fed. Cl. at 53.  "Fraud allegations should contain references to time, place, and manner of the fraud."  Id.  A "heightened fact pleading of specifics" is not required, "only enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.  If the particularity requirements of RCFC 9(b) are not satisfied, the Court of Federal Claims may dismiss the complaint without prejudice or allow the deficiency to be "cured by a later disclosure."  Jana, Inc. v. United States, 41 Fed. Cl. 735, 741 (1998).

-14-

Defendant's proposed counterclaims contain allegations sufficient to satisfy the requirements of RCFC 9(b). First, with respect to Lodge, defendant alleges the following:

- Lodge's contention that the differing site condition caused a delay of 115 days is false because 55 of those days occurred after the work had been completed, Def.'s Mot. Ex. D (Prop. <u>Lodge II</u> Am. Answer) ¶¶ 119-21;

- Lodge included claims for delay days for which it already received compensation from the Corps, <u>id.</u> ¶¶ 122-26;

- Lodge doubled-billed for the costs of pumps used in the dewatering process, <u>id.</u> ¶¶ 127-30;

- Lodge included claims for batch plant damage for which it already received compensation, <u>id.</u> ¶¶ 127, 131;

- Lodge claimed false depreciation costs for four dump trucks, <u>id.</u> ¶¶ 132-35;

- As part of its dewatering claim, Lodge included a $1.16 million pass-through claim from CCT that contained exaggerated costs, <u>id.</u> ¶¶ 136-47; and

- Lodge is not entitled to any further reimbursement for CCT's work due to a settlement agreement between Hanover and CCT, <u>id.</u> ¶¶ 148-54.

<u>Accord</u> Def.'s Mot. Ex. B (Prop. <u>Lodge I</u> Am. Answer) ¶¶ 101-36, ECF No. 68-2; <u>see also</u> Def.'s Answer <u>Lodge II</u> Am. Compl. ¶¶ 119-54; Def.'s Mot. 3-5.

Next, with respect to Hanover's direct actions, defendant alleges that Hanover "has attempted to practice fraud by seeking to obtain any funds that might be due to Lodge . . . , including Lodge's $1.1 million pass-through of CCT's claims, even though Hanover knows that CCT's claims were settled for $370,000 and that [the Corps] does not face $1.1 million in liability for CCT's pass-through claims." Def.'s Mot. Ex. A (Prop. <u>Hanover II</u> Am. Answer) ¶ 107, ECF No. 68-1; <u>accord</u> Def.'s Mot. Ex. C (Prop. <u>Hanover I</u> Am. Answer) ¶ 121, ECF No. 68-3; <u>see also</u> <u>id.</u> ¶¶ 112-17; Def.'s Mot. Ex. A (Prop. <u>Hanover II</u> Am. Answer) ¶¶ 98-103. Defendant also explains that Hanover "is either facilitating or allowing" Lodge to present CCT's pass-through claim despite Hanover's knowledge that (1) Lodge has no liability to CCT and (2) CCT assigned its claim to Hanover pursuant to the settlement agreement. Def.'s Reply Hanover Resp. 2-3. In other words, according to defendant, Hanover has "acted to allow a false claim to be presented" to the court by failing to alert the court of the existence of the settlement

agreement between CCT and Hanover, which was executed in August 2013, thus allowing Lodge to present the full value of CCT's pass-through claim to the court.[12]  Id. at 4.

Finally, with respect to CCT's pass-through claim, defendant notes that

- neither Lodge nor Hanover disclosed the settlement agreement to this court prior to responding to the instant motion, Def.'s Reply Lodge Resp. 9;

- although Lodge's present counsel may not have been aware of the settlement agreement between CCT and Hanover until late 2016, Lodge itself was contemporaneously aware of the agreement, id. at 10;

- neither Lodge nor Hanover have sought to restrict their claims with respect to CCT's pass-through claim to the amount that CCT received in satisfaction of "all of its claims connected with the project," id. at 11; accord id. at 26, and Lodge continues to assert CCT's pass-through claim in full despite recently amending its complaint in Lodge II, id. at 14;

- Lodge's presentation of CCT's pass-through claim was fraudulent because "documentary evidence" indicates that Lodge was aware that CCT believed Lodge's "direct actions" caused CCT's damages, id. at 25; and

- there is "documentary and testimonial evidence" concerning CCT's quantity of fill used and paid for by the Corps and the dewatering impact on the fill, id. at 25-26.

Accord Def.'s Mot. Ex. A (Prop. Hanover II Am. Answer) ¶¶ 85-103; Def.'s Mot. Ex. B (Prop. Lodge I Am. Answer) ¶¶ 118-36; Def.'s Mot. Ex. C (Prop. Hanover I Am. Answer) ¶¶ 99-117; Def.'s Mot. Ex. D (Prop. Lodge II Am. Answer) ¶¶ 136-54; see also Def.'s Answer Lodge II Am. Compl. ¶¶ 136-54.

---

[12]  In its proposed amended complaints, defendant does not explicitly allege that Hanover failed to alert the court of the settlement agreement between CCT and Hanover.  However, because defendant alleges that the settlement agreement was executed, that Lodge maintained the full amount of CCT's pass-through claim in this court, and that Hanover maintained its claims for the full amount of Lodge's claims, Def.'s Mot. Ex. A (Prop. Hanover II Am. Answer) ¶¶ 98-103, 107; Def.'s Mot. Ex. C (Prop. Hanover I Am. Answer) ¶¶ 112-17, 121, defendant does so implicitly.  In any event, defendant's explicit allegations concerning Hanover are sufficient to satisfy RCFC 9(b).

In sum, Hanover's contention that defendant failed to plead fraud with particularity pursuant to RCFC 9(b) lacks merit.  To the contrary, defendant has described specific facts and alleged that Lodge and Hanover possessed the necessary scienter.  Accordingly, defendant has fully disclosed the basis for its counterclaims and the evidence upon which it intends to rely such that Lodge and Hanover are sufficiently apprised to mount a defense.

### 3. Defendant's Proposed Amended Answers Advance Plausible Fraud Counterclaims Against Lodge

Having determined that defendant has pled fraud with sufficient particularity, the court now considers the plausibility of defendant's fraud counterclaims.  In arguing that its proffered fraud counterclaims against Lodge are not futile, defendant asserts, in addition to the averments listed above (including Lodge's improper advancement of CCT's pass-through claim), that

- there was "no basis for Lodge to claim any pumping costs above the cumulative amount it received" from the Corps because Lodge's actual costs were less than what Lodge was paid, Def.'s Reply Lodge Resp. at 23;

- Lodge's claim for "additional 'ownership' costs" for the batch plant is "patently incorrect" because although Lodge was "compensated in full for the batch plant, Lodge's dewatering claim includes $100,000" in such costs, id. at 24; and

- the value that Lodge used for each dump truck in calculating its equipment costs "was tens of times the actual value of Lodge's trucks," and that the "discrepancy between Lodge's representations in presenting its claims and reality is not subtle" or "non-material," id. at 24-25.

Upon reviewing all of defendant's allegations, the court finds that defendant has articulated a plausible claim with respect to Lodge's actions that would survive a motion to dismiss.  If proven, defendant's allegations concerning CCT's pass-through costs, CCT's settlement with Hanover, and Lodge's knowledge of the settlement suggest the possibility that Lodge knowingly (or, at a minimum, with reckless disregard) sought to be reimbursed for costs for which it knew or should have known that it neither paid nor had any continuing liability.  It is well settled that a prime contractor must be "liable for damages sustained by its subcontractor" to advance pass-through claims.  Metric Constructors, Inc. v. United States, 314 F.3d 578, 581 (Fed. Cir. 2002) (emphasis added).  Such liability can be an outstanding obligation or one that has already been fulfilled.  Ky. Bridge & Dam, Inc. v. United States, 42 Fed. Cl. 501, 524 (1998).  Here, however, there is no evidence that either option is applicable.

Therefore, if proven, Lodge's course of conduct as alleged by defendant would amount to fraud, and would give rise to claim forfeiture under the Special Plea in Fraud defense, liability under the anti-fraud provision of the CDA, and liability under the False Claims Act.  Moreover, since Lodge's dewatering and design claims both include pass-through costs from CCT for

-17-

which Lodge is allegedly not liable, defendant's counterclaims can be asserted against both claims.  Even assuming, without deciding, that Lodge did not improperly present CCT's pass-through costs as part of its claims, defendant has articulated sufficient facts with respect to Lodge directly to state a prima facie cause of action with respect to each of its counterclaims.

Lodge argues generally that any errors made in submitting its claims were the result of "mistakes" that "do not amount [to] fraud or reckless disregard."  Lodge Resp. 23.  With respect to CCT's pass-through claim, Lodge emphasizes that it "conducted a reasonable review and investigation"; that any errors contained therein "were not known, nor were they ignored"; and that Lodge "never knew, and had no reason to know" that CCT presented its claim "as a worst case scenario for the purposes of negotiation."  Id. at 23-24.  Lodge further emphasizes that its pursuit of CCT's pass-through claim, at most, resulted from "honest and explainable mistakes of facts and law" because "Lodge justifiably believed it was obligated to continue to pursue CCT's portion of the Dewatering Claim on behalf of Hanover" and that its current counsel was "not aware of the settlement agreement between Hanover and CCT until August 2016 when the issue arose in Mr. Coddington's deposition."  Id. at 27.

Lodge's attempts to explain its actions are unavailing because they amount to conclusory, self-serving statements by counsel in its brief rather than documentary or testimonial evidence—unlike, for example, the deposition testimony of Mr. Coddington, in which Mr. Coddington repeatedly emphasized that CCT had no further claims against Lodge and Hanover.  Thus, Lodge's proffered explanations will not prevent defendant from being able to advance its counterclaims.

### 4.  If Lodge Committed Fraud, Hanover Cannot Recover

The court now considers the extent to which any fraud by Lodge, if proven, impacts Hanover's subrogation claim.

> The theory of equitable subrogation is based on the view that the triggering of a surety's bond obligation gives rise to an implied assignment of rights by operation of law whereby the surety is subrogated to the [principal obligor's] property rights in the contract balance.  That is, the surety step[s] into the shoes of the principal obligor and is entitled to all of its rights relating to the construction contract.

Lumbermens Mut. Cas. Co. v. United States, 654 F.3d 1305, 1312 (Fed. Cir. 2011) (alterations in original) (citations and internal quotation marks omitted).  In other words, by "stepping into the shoes" of the contractor via subrogation, the surety can only recover that which the contractor is entitled to recover.  Id.

Because a surety has no right of recovery if the contractor has no right of recovery, Hanover cannot recover what Lodge cannot recover.  Thus, if Lodge committed fraud and forfeits its claim(s), Hanover has no subrogation claim.  Accordingly, if defendant is permitted to assert counterclaims against Lodge, defendant can properly assert those same counterclaims

against Hanover, at least to the extent that Hanover asserts equitable subrogation rights.  Since Hanover asserted its equitable subrogation rights in both <u>Hanover I</u> and <u>Hanover II</u>, defendant's counterclaims are relevant in both cases.

### 5.  If Lodge Committed Fraud, Hanover Is Liable for Damages Caused by Lodge, but Not Lodge's Penalties

The court also considers the extent to which Hanover faces potential liability for any fraud by Lodge.  In addition to facing the possibility of claim forfeiture, Lodge faces the possibility of incurring civil penalties if defendant is allowed to pursue its fraud counterclaims. Hanover argues that "(1) Hanover is not liable for extra-contractual damages under the Miller Act Performance Bond; (2) Lodge's allegedly fraudulent submission of claims cannot be imputed to Hanover; and (3) Hanover did not present the allegedly fraudulent claims to the Government."  Hanover Resp. 2.  With respect to Lodge advancing CCT's pass-through claim, Hanover argues that it is not pursuing CCT's full claim but instead "has only asserted an equitable lien over any recoveries that Lodge may obtain."  <u>Id.</u> at 15.  On the other hand, defendant contends that

- the "express language of the performance and payment bonds . . . state that Hanover and Lodge face joint and several liability under the [Corps] contracts" and there are "no exceptions in the case of fraud," and

- "Hanover, as Lodge's surety, is bound by the fraudulent acts of the principal 'debtor,' which is Lodge."

Def.'s Reply Hanover Resp. 4, 21.  Both parties rely on only nonbinding or inapposite authority to support their positions.

Sureties are generally "liable for the principal's debt or duty to the third party obligee (here, the government)."  <u>Ins. Co. of the W. v. United States</u>, 243 F.3d 1367, 1370 (Fed. Cir. 2001).  However, a surety is not in privity of contract with the government.  <u>Id.</u>  A performance bond is "for the protection of the Government."  40 U.S.C. § 3131(b)(1) (2006).[13]  Specifically, a performance bond surety "guarantees performance of the contract and completion of the project if the bonded contractor defaults."[14]  <u>Nelson Constr.</u>, 79 Fed. Cl. at 90.  The performance bond surety has multiple options in the event of default, one of which is to "assume liability <u>for the government's costs</u> in completing the contract that exceed the contract price," <u>id.</u> (emphasis added), which is the route Hanover chose here.  Therefore, a performance bond surety is liable for any contractual damages sustained by the government, but it cannot be held liable for any

---

[13]  The court relies on the version of the statute in effect when the bonds were executed.

[14]  Contractors must also post a payment bond for government construction contracts in excess of $100,000 to protect their subcontractors and vendors.  40 U.S.C. § 3131(b)(2); <u>Nelson Constr. Co. v. United States</u>, 79 Fed. Cl. 81, 90 (2007).

extra-contractual penalties against the principal unless the bond so provides.  See 40 U.S.C.
§ 3131(e) (providing contracting officers with the authority to "require a performance bond or
other security in addition to those [bonds] specified in [40 U.S.C. § 3131(b)]").  To the extent
that sureties are liable for the fraudulent actions of their principals, as defendant contends, this
proposition is best understood as preventing sureties from being able to use the principal's fraud
to shield themselves from liability for damages caused by the principal; it does not extend to
punitive assessments, i.e., penalties.  Thus, the court must determine which measures of fraud
liability that are relevant in these consolidated cases constitute contractual damages.

The consequences of a finding under each of defendant's counterclaims are as follows:

| Statute | Liability |
|---|---|
| Special Plea in Fraud defense 28 U.S.C. § 2514 | • Claim forfeiture |
| CDA anti-fraud provision 41 U.S.C. § 604 | • Damages<br>• Costs of reviewing fraudulent portion of claim |
| False Claims Act 31 U.S.C. § 3729 | • Civil penalty<br>• Triple damages<br>• Costs of recovery |

See supra Section III.D.1.  Claim forfeiture under the Special Plea in Fraud defense is not a
measure of any type of damages; it simply means that the contractor cannot recover any portion
of the fraud-tainted claim.  Moreover, the civil penalty under the False Claims Act clearly does
not represent any of "the government's costs in completing the contract that exceed the contract
price."  Any costs incurred by the government in recovering a False Claims Act civil penalty
similarly do not relate to contract completion expenses.

Actual damages sustained (under the False Claims Act, only a single measure of damages
as opposed to triple damages), as well as costs to recover actual damages, arguably constitute
contract completion expenses.  Here, however, the Corps has not sustained any actual damages
for which Lodge—and possibly, by extension, Hanover—is potentially liable under either the
CDA or the False Claims Act because the amounts at issue in the dewatering and design claims
have not been paid, and the dispute regarding default termination costs in Hanover II concerns
funds that Hanover has already paid to the Corps.  Since there were no actual damages sustained
by the Corps under any of these statutes, the court need not determine whether (1) such damages
would constitute reimbursable costs incurred by the Corps to complete the contract beyond the
contract price or (2) Hanover could be liable for the costs of recovering any such damages.  In
short, although Hanover can be held liable as Lodge's surety for contractual damages caused by
Lodge, there were no such damages here except, pursuant to the CDA, the government's costs to
review the fraudulent portion of Lodge's claims (assuming any fraud actually took place—
which, as explained above, is not the issue at this stage of litigation).

Accordingly, Hanover cannot be held liable as Lodge's surety for any judgment against
Lodge pursuant to defendant's counterclaims—except, pursuant to the CDA, the government's
costs to review the fraudulent portion of Lodge's claims, if any such fraud is found—unless the

performance bond so provides.  However, because the court finds, as discussed below, that defendant's proposed amended answers advance plausible fraud counterclaims against Hanover directly, the court need not examine the contents of the performance bond at this time to determine the extent to which Hanover faces liability as Lodge's surety.

### 6.  Defendant's Proposed Amended Answers Advance Plausible Fraud Counterclaims Against Hanover Directly

Next, the court confronts the issue of whether defendant advances plausible fraud counterclaims against Hanover directly.  Hanover asserts that the Tender and Release Agreement absolved it of liability from "any and all" past, present, or future claims of any kind, including fraud, with respect to Lodge's contract with the Corps.  Hanover Resp. 8-9.  Defendant remarks that the Tender and Release Agreement "was executed by a [Corps] contracting officer who had no authority to waive fraud claims" and thus defendant "did not waive or release Hanover from any fraud claims."  Def.'s Reply Hanover Resp. 2.

Defendant is correct.  The CDA expressly prohibits contracting officers from being able to "settle, compromise, pay, or otherwise adjust any claim involving fraud."  41 U.S.C. § 605(a); accord 48 C.F.R. 33.210(b) (2012) ("The authority [of contracting officers] to decide or resolve claims does not extend to . . . [t]he settlement, compromise, payment or adjustment of any claim involving fraud.");[15] AEY, Inc. v. United States, 114 Fed. Cl. 619, 632 n.13 (2014) ("[T]he Contract Disputes Act does not allow a contracting officer to consider claims involving fraud.").  Accordingly, contracting officers cannot relieve contractors from liability for fraud.  Moreover, it is a longstanding "maxim that the United States is not bound by its agents acting beyond their authority and contrary to regulation."  Urban Data Sys., Inc. v. United States, 699 F.2d 1147, 1153 (Fed. Cir. 1983).  Therefore, to the extent that the Tender and Release Agreement purports to insulate Hanover from liability for fraud, either directly or as surety for Lodge, such release is ineffective.

Further, even if the Tender and Release Agreement could have released Hanover from further liability with respect to the original contract, the agreement cannot be construed to release Hanover from its own fraud, if any, in presenting claims.  In other words, Hanover is still liable for any improprieties in its own actions.

As explained above, defendant has alleged specific actions taken by Hanover directly. See supra Section III.D.2.  If proven, defendant's allegations concerning CCT's settlement with Hanover amount to a charge that Hanover knowingly (or, at a minimum, with reckless disregard) seeks reimbursement for costs for which it was and is fully aware that it neither paid nor maintained any continuing liability.  Therefore, Hanover's course of conduct as alleged by defendant amounts to fraud, and thus gives rise to claim forfeiture under the Special Plea in Fraud defense, liability under the anti-fraud provision of the CDA, and liability under the False Claims Act.  In short, with respect to Hanover's direct actions, defendant has articulated plausible counterclaims that would survive a motion to dismiss.

---

[15]  The court cites to the version of the regulation in effect when the Tender and Release Agreement was executed.

## E.  Defendant's Mootness Argument Is Moot

Finally, the court addresses defendant's mootness argument.  In its reply to Lodge's response, defendant contends that its motion for leave to amend its answer with respect to Lodge II is "literally moot" because it already filed a new answer "as a matter of right" in response to Lodge's amended complaint in that case.  Def.'s Reply Lodge Resp. 3.  Defendant also asserts that its motion is moot with respect to Lodge I because, if the court were to find fraud through the Special Plea in Fraud defense counterclaim, the entire contract "would be considered a nullity and all claims under it forfeited."  Id. at 5-6.  Defendant further posits that its answer to the Lodge II amended complaint also "effectively moot[s]" its motion with respect to the remaining consolidated cases, i.e., Hanover I and Hanover II, because all of the cases "involve the same, single contract . . . and the same allegations of fraud."  Def.'s Reply Hanover Resp. 1-2.  Therefore, according to defendant, "a finding of fraud in any one of the cases will, with respect to [its] Special Plea in Fraud counterclaim, nullify [the] contract, barring the recovery in all of the consolidate[d] cases."  Id. at 2.

The relevant issues are (1) whether defendant was permitted to file its answer to the Lodge II amended complaint as a matter of right and (2) if so, whether the new answer moots the instant motion with respect to the remaining consolidated cases.  Some courts take the view that "when the complaint is amended the defendant should be entitled to amend the answer to meet the contents of the new complaint" without qualification.  See, e.g., Gov't Servs. Corp. v. United States, 125 Fed. Cl. 586, 590-91 (2016) (internal quotation marks and alterations omitted) (relying on 6 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1476 (3d ed. 2010)); accord Elite Entm't, Inc. v. Khela Bros. Entm't, 227 F.R.D. 444, 446 (E.D. Va. 2005).  However, a "more moderate view" is that an answer to an amended complaint may be filed without leave of the court "only when the amended complaint changes the theory or scope of the case."  Id.  The moderate approach is "predominant in the caselaw" and is viewed by at least some prominent commentators as the most appropriate paradigm.  Id. at 446-47 (citing 3 James Wm. Moore, Moore's Federal Practice ¶ 15.17[6] (3d ed. 1997)).

Defendant appears to advocate for the permissive approach, and also avers that the Lodge II amended complaint expanded the scope of the case by "add[ing] $514,889.74 in damages beyond the amounts included in the original request."  Def.'s Reply Lodge Resp. 3-5.  In essence, defendant urges the court to adopt the permissive approach, while maintaining that even under the moderate approach it did not need leave of court to file its answer to the Lodge II amended complaint.  On the other hand, Lodge declares that defendant's answer to the Lodge II amended complaint was "inappropriate and premature" because the amended complaint "raised no new issues," Lodge Answer Def.'s Countercls. 1, and was "filed prior to the disposition of [defendant's motion]," Lodge Resp. Opp'n Def.'s Mot. 1, ECF No. 84.[16]  Thus, although not directly articulated by Lodge, the court construes Lodge's argument as advocating that the moderate approach is more appropriate and that defendant was required to seek leave of court, which it failed to do, before filing its answer to the Lodge II amended complaint.

----

[16]  Lodge did not formally move to strike defendant's answer to the amended complaint in Lodge II.  To the extent that Lodge's averments concerning the propriety of defendant's answer to the Lodge II amended complaint constitute a motion to strike, the motion is denied.

-22-

Whether defendant was permitted to file a new answer in <u>Lodge II</u> as a matter of right and whether the new answer moots defendant's motion are nonissues. As explained above, the court has determined that defendant's request to file amended answers asserting an affirmative defense plus three counterclaims is timely, shows no improper purpose, will not cause undue prejudice, and is not futile. Therefore, the court need not address defendant's mootness argument.

The court notes, however, that (1) defendant's answer to the amended complaint in <u>Lodge II</u> mirrors its proposed amended answer in that case, and (2) Lodge has already filed an answer to defendant's counterclaims in <u>Lodge II</u> (albeit while simultaneously protesting the propriety of defendant's answer to its amended complaint). Accordingly, granting defendant leave to amend its answer in <u>Lodge II</u> would elevate form over substance in that case.

## IV.  CONCLUSION

The court has considered all of the parties' arguments. To the extent not discussed herein, they are unpersuasive, without merit, or unnecessary for resolving the issues before the court.

Defendant's request to file amended answers in these consolidated cases asserting an affirmative defense plus three counterclaims is timely and shows no improper purpose. Allowing defendant to file its proposed amended answers will not cause plaintiffs undue prejudice. Defendant's counterclaims are not futile and would survive a motion to dismiss. However, defendant's proposed amended answer in <u>Lodge II</u> is superfluous.

Accordingly, defendant's motion is **GRANTED** with respect to <u>Lodge I</u>, <u>Hanover I</u>, and <u>Hanover II</u>, and is **DENIED AS MOOT** with respect to <u>Lodge II</u>. Defendant shall file its amended answers **no later than Friday, September 22, 2017**.

IT IS SO ORDERED.

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge